**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| OTELIA SIMMONS,<br>*Plaintiff*,<br>v.<br>TROY E. MEINK,<br>*Defendant*. | Civil Action No. 25 - 1826 (LLA) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Otelia Simmons, now proceeding pro se, brings this action against Troy E. Meink in his official capacity as the Secretary of the U.S. Department of the Air Force. Ms. Simmons alleges that her former employer, the Air Force, discriminated against her, created a hostile work environment, and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ECF No. 1. Pending before the court is the Secretary's motion to dismiss. ECF No. 9. For the reasons explained below, the court grants in part and denies in part the Secretary's motion.

## I. FACTUAL BACKGROUND

The following factual allegations drawn from Ms. Simmons's complaint, ECF No. 1, are accepted as true for the purpose of evaluating the motion before the court, *Am. Nat'l Ins. Co. v. Fed. Deposit Ins. Co.*, 642 F.3d 1137, 1139 (D.C. Cir. 2011). Ms. Simmons is an African American woman who worked as an Equal Employment Specialist at Joint Base Anacostia-Bolling from October 2020 to October 2021. ECF No. 1, at 3 ¶¶ 2-3, 10. During the relevant period of

her employment, Ms. Simmons's first-line supervisor was Thomas Mahoney, a white man who was the Director of Equal Opportunity. *Id.* at 4 ¶ 11.

Between February 2021 and July 2021, Ms. Simmons informed Janice Jackson, the Equal Employment Opportunity ("EEO") Functional Manager, that Mr. Mahoney was failing to maintain neutrality in processing EEO cases. *Id.* at 4 ¶ 12. Between February 2021 and September 2021, Ms. Simmons further reported to Ms. Jackson that Mr. Mahoney had made statements to the effect that "[t]his is not a black person's program, and he needed more [w]hite people in the office." *Id.* at 4 ¶ 13. Between March 2021 and October 2021, Mr. Mahoney spoke to Ms. Simmons "in a condescending/disrespectful manner, treated her differently when he assigned tasks and worked complaints, and instructed her not to speak to other [EEO] professionals." *Id.* at 4 ¶ 14. Mr. Mahoney also treated Ms. Simmons as "at fault" after she filed a complaint against an instructor for his harassing behavior. *Id.* at 4 ¶ 15.

In June 2021 and September 2021, Ms. Simmons told Mr. Mahoney that she believed his directive that all mediation cases be referred to him violated agency policies. *Id.* at 4 ¶ 16. In July 2021, Ms. Simmons also told Mr. Mahoney that she believed he was not maintaining neutrality in processing EEO cases. *Id.* at 5 ¶ 17. Later that month, Mr. Mahoney prohibited Ms. Simmons from speaking with a coworker, denied her request to have a third party present for a meeting, continued to tell her to "be quiet" and "stop talking," and called her during off-duty hours to accuse her of insubordination. *Id.* at 5 ¶¶ 18-20. Between July 2021 and September 2021, "Mr. Mahoney made several comments [Ms. Simmons] believed were race and gender related[:] 'Col[onel] Rabe needs to understand this is not a black person's program'; 'we need more diversity in this office'; that he needs to hire a 'white woman'; and 'there is only one white person in the office.'" *Id.* at 5 ¶ 21. In September 2021, Ms. Simmons reported to Ms. Jackson that

Mr. Mahoney had issued the directive that all mediation cases be referred to him, in violation of agency policies. *Id.* at 6 ¶ 23. Around the same time, Mr. Mahoney "angrily instructed" Ms. Simmons not to speak with coworkers and "accused her of undermining his staff by pointing out perceived mistakes." *Id.* at 5-6 ¶ 22.

On October 4, 2021, Ms. Simmons learned that Mr. Mahoney had recommended against converting her position from a provisional appointment into a career-conditional appointment. *Id.* at 6 ¶ 24. In that recommendation, Mr. Mahoney reported "false information" about Ms. Simmons to Human Resources, including accusing her of "poor [customer] conduct," "being unresponsive to complaints," "refus[ing] to perform a task," and "being untruthful about her Reserve duty." *Id.* Mr. Mahoney issued Ms. Simmons a notice of termination that same day. *Id.* Ms. Simmons later learned that Mr. Mahoney had issued her an "unacceptable" performance rating. *Id.* at 6 ¶ 26.

## II. PROCEDURAL HISTORY

On October 5, 2021, Ms. Simmons initiated counseling with the Air Force's EEO office. ECF No. 1, at 3 ¶ 2. She filed a formal complaint on November 22, 2021. *Id.* at 3 ¶ 3. In June 2022, Ms. Simmons requested a hearing before the Equal Employment Opportunity Commission (the "EEOC"). *Id.* at 3 ¶ 4. The EEOC granted summary judgment in the Secretary's favor, and the EEOC's Office of Federal Operations affirmed that decision on appeal. *Id.* at 3 ¶¶ 5-7.

In June 2025, Ms. Simmons, represented by counsel, filed this action alleging violations of Title VII. *Id.* at 6-13 ¶¶ 27-77. The Secretary filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 9. Ms. Simmons sought leave to file a pro se opposition, ECF No. 10, and her counsel filed a motion to withdraw, ECF No. 11. The court granted the motion to withdraw and docketed Ms. Simmons's pro se opposition. Nov. 10, 2025 Minute Order; *see* ECF

No. 12. The Secretary filed a reply, ECF No. 13, and the court subsequently issued a *Fox/Neal* order, ECF No. 14, advising Ms. Simmons of her obligations under *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (per curiam), and *Neal v. Kelly*, 963 F.2d 453, 456-57 (D.C. Cir. 1992), and allowing her to file an amended opposition, to which the Secretary could file a supplemental reply. Ms. Simmons filed an amended opposition, ECF No. 15, but the Secretary did not file a supplemental reply. The motion to dismiss is fully briefed. ECF Nos. 9, 12, 13, 15.

## III. LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), the court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see Atherton v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009). Although the plausibility standard does not require "detailed factual allegations," it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice. *Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

### B. Pro Se Litigants

Filings by pro se litigants are "liberally construed." *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). This liberal construction "is not, however, a license to ignore the Federal Rules of Civil Procedure." *Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009); *see Wilbur v. Cent. Intel. Agency*, 273 F. Supp. 2d 119, 123 (D.D.C. 2003) ("Although [the plaintiff] is now without a lawyer, he is still required to follow the basic rules of court procedure."). Thus, "the complaint must still present a claim on which the Court can grant relief" in order to survive a motion to dismiss under Rule 12(b)(6). *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (internal quotation marks omitted) (quoting *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013)).

## IV. DISCUSSION

Ms. Simmons alleges that the Air Force violated Title VII by discriminating against her based on race and sex (Count I), creating a hostile work environment (Count II), retaliating against her (Count III), and creating a retaliatory hostile work environment (Count IV). ECF No. 1, at 6-13 ¶¶ 27-77; ECF No. 12, at 2-6; ECF No. 15, at 3-6.[1] The Secretary responds that Ms. Simmons fails to plausibly allege discrimination, hostile work environment, or retaliation of any kind under Title VII. ECF No. 9, at 6-13; ECF No. 13, at 2-7. The court addresses each argument in turn.

---

[1] The citations to ECF Nos. 12 and 15 refer to the CM/ECF-generated page numbers at the top of each page rather than any internal pagination.

**A. Discrimination**

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to her "compensation, terms, conditions, or privileges of employment" because of her "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To prevail on a Title VII discrimination claim, a plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Wiley v. Glassman*, 511 F.3d 151, 156 (D.C. Cir. 2007) (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). "[A]n employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss," *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011), but she must still "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The Secretary does not dispute that Ms. Simmons is an African American woman and therefore belongs to two protected classes based on her race and sex. *See* ECF No. 9, at 2, 7; ECF No. 13, at 2. Nor does the Secretary dispute that Ms. Simmons suffered adverse employment action. *See* ECF No. 9, at 6-9; ECF No. 13, at 2-5. Accordingly, the court focuses its analysis on the third element of causation.

Ms. Simmons argues that there is a causal connection because (1) other similarly situated employees were treated more favorably, ECF No. 1, at 8 ¶ 35; ECF No. 15, at 3; and (2) Mr. Mahoney made several race- and gender-related comments during her tenure, ECF No. 1, at 5 ¶ 21; ECF No. 12, at 2; ECF No. 15, at 3. The Secretary argues that (1) Ms. Simmons does not plausibly allege that she was treated differently from similarly situated individuals, ECF No. 9, at 7-9; ECF No. 13, at 3-4; and (2) Mr. Mahoney's "stray remarks" are insufficient to satisfy

causation, ECF No. 9, at 7; *see* ECF No. 13, at 2. The court agrees with the Secretary on his first argument but disagrees on the second.

One way that a plaintiff can allege a causal connection between her protected characteristic and the adverse employment action is "by showing 'that [she] was treated differently from similarly situated employees who are not part of the protected class.'" *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (quoting *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). While the burden is "not onerous" at the motion-to-dismiss stage, it requires more than the bald assertion that there is a similarly situated comparator. *SS & T, LLC v. Am. Univ.*, No. 19-CV-721, 2020 WL 1170288, at *4 (D.D.C. Mar. 11, 2020) (quoting *Nanko Shipping, USA v. Alcoa, Inc.*, 850 F.3d 461, 467 (D.C. Cir. 2017)). "A plaintiff's assertion that [she] is similarly situated to other[s] . . . is just a legal conclusion—and a legal conclusion is never enough." *Id.* at *5 (second and third alterations in original) (quoting *Bekkem v. Wilkie*, 915 F.3d 1258, 1275 (10th Cir. 2019)).

Ms. Simmons does not plausibly allege that similarly situated employees of a different race or sex were treated more favorably. To the contrary, her complaint rests on conclusory statements of the legal standard, which the court need not credit. *See Iqbal*, 556 U.S. at 678. Specifically, Ms. Simmons alleges that she was "treated differently and subjected to disparate treatment in comparison to non-African American and [m]ale employees that [the Secretary] employed," and "deprived . . . of her rights as enjoyed by her non-African American and [m]ale coworkers." ECF No. 1, at 7 ¶¶ 27, 29. She also maintains that "[o]ther employees who were similarly situated . . . have been treated more favorably." *Id.* at 8 ¶ 35. But Ms. Simmons does not allege *how* other employees were similarly situated or treated differently than she was. Although Ms. Simmons need not identify "a perfectly matched comparator," ECF No. 15, at 3, her formulaic recitation of the elements of a discrimination claim cannot suffice, *see Iqbal*, 556 U.S. at 678.

Courts have routinely concluded that such bare assertions are insufficient to survive a motion to dismiss. *See, e.g.*, *Jones v. Ass'n of Am. Med. Colls.*, No. 22-CV-1680, 2023 WL 2327901, at *11 (D.D.C. Mar. 2, 2023) (dismissing a discrimination claim where the plaintiff failed to "proffer factual allegations describing 'any comparator employees [outside of his race], how they were similarly situated, or how they were treated differently than [he was]'" (first alteration in original) (quoting *Harris v. Mayorkas*, No. 21-CV-1083, 2022 WL 3452316, at *6 (D.D.C. Aug. 18, 2022))); *Beaulieu v. Barr*, No. 15-CV-896, 2019 WL 5579968, at *4 (D.D.C. Oct. 29, 2019) (dismissing a discrimination claim where the plaintiff did not "identify any 'comparator' employees who were treated differently").[2]

But even with the absence of factual allegations as to a comparator, Ms. Simmons alleges other facts sufficient to support a reasonable inference of discrimination. *See Harris*, 791 F.3d at 68. "Title VII claims may be proved by direct or circumstantial evidence." *Oviedo v. Wash. Metro. Area Transit Auth.*, 299 F. Supp. 3d 50, 59 (D.D.C. 2018), *aff'd* 948 F.3d 386 (D.C. Cir.

---

[2] The Secretary argues that Ms. Simmons improperly asserts new allegations in her initial opposition to the motion to dismiss. ECF No. 13, at 4; *compare* ECF No. 12, at 3-4 (attributing new allegations to the complaint), *with* ECF No. 1. Although "it is axiomatic that a party may not amend [her] complaint through an opposition brief," *Masroor v. Noem*, No. 25-CV-256, 2025 WL 2439176, at *3 (D.D.C. 2025) (quoting *Sai v. Transp. Sec. Admin.*, 326 F.R.D. 31, 33 (D.D.C. 2018)), the court must liberally construe pro se filings, *see Erickson*, 551 U.S. at 94; *see also Brown v. Whole Foods Mkt. Grp., Inc.*, 789 F.3d 146, 152 (D.C. Cir. 2015) ("We have previously held that a district court errs in failing to consider a *pro se* litigant's complaint 'in light of' all filings, including filings responsive to a motion to dismiss."); *but see Greer v. Bd. of Trs. of Univ. of D.C.*, 734 F. Supp. 3d 75, 85 (D.D.C. 2024) ("It is unclear, however, whether our Circuit requires district courts to consider new claims (as well as new facts) articulated in a pro se opposition to a motion to dismiss."). Even if the court were to consider Ms. Simmons's new allegations, those allegations are still insufficient because they merely reiterate the conclusory assertion that Ms. Simmons was subjected to "differential treatment." ECF No. 12, at 3-4; *see Acon-Chen v. Duffy*, No. 24-CV-1529, 2026 WL 1998768, at *10 (D.D.C. July 10, 2026) (citing *Greer* and finding insufficient new allegations in the pro se plaintiff's opposition to the motion to dismiss).

2020). Direct evidence of discrimination gives rise to an inference of discrimination sufficient for a *prima facie* case that survives a motion to dismiss. *Townsend v. United States*, 236 F. Supp. 3d 280, 297 (D.D.C. 2017). "A 'statement that itself shows . . . bias in the employment decision' qualifies as direct evidence" of discrimination. *Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (quoting *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)).

"While courts have not precisely defined what constitutes direct evidence, it is clear that at a minimum, direct evidence does not include stray remarks in the workplace, particularly those made by nondecision-makers or statements made by decisionmakers unrelated to the decisional process itself." *Oviedo*, 299 F. Supp. 3d at 59 (quoting *Hajjar-Nejad v. George Wash. Univ.*, 37 F. Supp. 3d 90, 125 (D.D.C. 2014)). A plaintiff must therefore show some "'nexus between the stray remark and the adverse employment decision'"—for example, by showing that the "remark was made by an individual with the power to influence Plaintiff's termination" or that the "remark was temporally close in time to the termination." *Ajisefinni v. KPMG LLP*, 17 F. Supp. 3d 28, 44 (D.D.C. 2014) (quoting *Kalekiristos v. CTF Hotel Mgmt. Corp.*, 958 F. Supp. 641, 665 (D.D.C. 1997)). "Consequently, motions to dismiss are regularly denied in this Circuit where the plaintiff alleges that the employer made a blatant discriminatory statement together with a plausible connection between that statement and an adverse employment decision." *Townsend*, 236 F. Supp. 3d at 301.

Reading the complaint in the light most favorable to Ms. Simmons, as the court must, the court concludes that she plausibly alleges causation. According to Ms. Simmons, between July 2021 and September 2021—while Mr. Mahoney was her first-line supervisor and serving as the Director of Equal Opportunity—he made "several comments" that "'Col[onel] Rabe needs to understand this is not a black person's program'; 'we need more diversity in this office'; that he

needs to hire a 'white woman'; and 'there is only one white person in the office.'" ECF No. 1, at 4-5 ¶¶ 11, 21. Then, on October 4, 2021, Ms. Simmons learned that Mr. Mahoney had recommended against converting her position from a provisional appointment to a career-conditional appointment, and Mr. Mahoney terminated her employment that same day. *Id.* at 6 ¶¶ 24-25. Furthermore, either shortly before or contemporaneous with those actions, Mr. Mahoney issued an "unacceptable" performance rating to Ms. Simmons. *Id.* at 6 ¶ 26; *see id.* 6 ¶ 24; ECF No. 15, at 2. The court can therefore draw reasonable inferences in Ms. Simmons's favor that Mr. Mahoney had "the power to influence [her] termination," and his comments were "temporally close in time to the termination." *Ajisefinni*, 17 F. Supp. 3d at 45.

At most, the Secretary discounts Mr. Mahoney's statements as "stray remarks" made "at some unspecified time during [Ms. Simmons's] employment." ECF No. 9, at 7. While the complaint is far from a model of clarity, Ms. Simmons does allege a three-month window in which Mr. Mahoney made the offending comments (between July 2021 and September 2021), ECF No. 1, at 5 ¶ 21, and the specific date on which Mr. Mahoney recommended against converting her position and terminated her employment (October 4, 2021), *id.* at 6 ¶ 25. The Secretary does not dispute that Mr. Mahoney was in a decision-making role that influenced Ms. Simmons's termination. *See* ECF No. 9, at 7; ECF No. 12, at 2. Courts have deemed similar allegations to be sufficient at the pleading stage. *See, e.g.*, *Abdelhamid v. Lane Constr. Corp.*, 744 F. Supp. 3d 10, 20-21 (D.D.C. 2024) (finding sufficient facts to support an inference of national origin discrimination where the company executive made disparaging comments to the plaintiff at a meeting, the plaintiff was "within [the executive's] chain of supervision," and the plaintiff was terminated the day after the meeting); *Alston v. Johnson*, 208 F. Supp. 3d 293, 296, 302 (D.D.C. 2016) (finding sufficient facts to support an inference of race discrimination where emails

containing derogatory language were sent by the plaintiff's third-line supervisor, "who made the decision not to recommend [the plaintiff]" for a promotion, although the plaintiff did not "allege that the emails referred directly to him").

The court recognizes that the Secretary tells a different story: that Mr. Mahoney had "legitimate concerns" with Ms. Simmons's "poor conduct, unresponsiveness, insubordination, and related deficiencies," which justified terminating her employment.[3] ECF No. 9, at 7; ECF No. 13, at 5. But at the motion-to-dismiss stage, the court must assume that Ms. Simmons's version of events is true and set aside the Secretary's conflicting narrative. *See Twombly*, 550 U.S. at 555. Accordingly, the court denies the Secretary's motion to dismiss Count I.

### B. Hostile Work Environment

To survive a motion to dismiss a hostile work environment claim, a plaintiff must show that her "workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citation omitted) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)). "[A] few isolated incidents of offensive conduct do not amount to actionable harassment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002). The incidents "must be adequately connected to each other . . . as opposed to being an array of unrelated discriminatory or retaliatory acts." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011). In determining whether a plaintiff can proceed with a hostile work environment claim, the court "looks to the totality of the circumstances,

---

[3] As support, the Secretary cites to "Exhibit 1, Memorandum for Record," ECF No. 9, at 8, but he did not attach that document to any filing before the court.

including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 577 (D.C. Cir. 2013) (per curiam) (quoting *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008)). This standard is "a high bar." *Foxworth v. McDonough*, 712 F. Supp. 3d 1, 10 (D.D.C. 2024).

Ms. Simmons alleges that she was subjected to a hostile work environment because Mr. Mahoney "engaged in a persistent pattern of severe and pervasive harassment." ECF No. 1, at 8 ¶ 41. Specifically, she asserts that over an eight-month period, Mr. Mahoney spoke to her in a condescending manner, treated her differently when he assigned tasks, instructed her not to speak to coworkers, told her to "be quiet" and "stop talking," and called her after-hours to accuse her of insubordination. *Id*. at 8-9 ¶ 42. The Secretary responds that Ms. Simmons's allegations "at most describ[e] ordinary tribulations of the workforce" and therefore "do not approach the level of severity or pervasive conduct necessary to sustain a hostile work environment claim." ECF No. 9, at 10; ECF No. 13, at 5. While Mr. Mahoney's conduct may have been less than appropriate, the court agrees with the Secretary that Ms. Simmons fails to allege sufficient facts to support a hostile work environment claim.

The harms Ms. Simmons alleges—being spoken to in a condescending manner, treated differently when assigned work, instructed to stop talking to others, and accused of insubordination—fail to meet the "high bar" required for a hostile work environment claim. *Foxworth*, 712 F. Supp. 3d at 10; *see Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 94-95 (D.D.C. 2009) (dismissing a hostile work environment claim based on "disparaging remarks, criticisms of [the plaintiff's] work, and other negative comments"); *Singh v. U.S. House of Representatives*, 300 F. Supp. 2d 48, 54-57 (D.D.C. 2004) (dismissing a hostile work environment

claim where an employee was "shut out of certain meetings, denied travel opportunities and other perks, and spoken to in a condescending manner"). "[T]he D.C. Circuit has held that workplace tribulations, such as 'petty insults, vindictive behavior, and angry recriminations[,]' are not actionable [as a hostile work environment claim] under Title VII." *Dieng v. Am. Insts. for Rsch. in Behav. Scis.*, 412 F. Supp. 3d 1, 15 (D.D.C. 2019) (first alteration in original) (quoting *Brooks v. Grundmann*, 748 F.3d 1273, 1277-78 (D.C. Cir. 2019)). Accordingly, while Mr. Mahoney's conduct may have been "disrespectful and unfair," that "does not mean that [Ms. Simmons] was subjected to an illegal hostile work environment." *Singh*, 300 F. Supp. 2d at 57; *see Dudley v. Wash. Metro. Area Transit Auth.*, 924 F. Supp. 2d 141, 171 (D.D.C. 2013) ("A litany of cases shows that simply having a rude, harsh, or unfair boss is not enough for a hostile work environment claim.").

Ms. Simmons's strongest allegations in support of a hostile work environment are the instances in which Mr. Mahoney made racialized and gendered comments about the office's composition. *See* ECF No. 1, at 5 ¶ 21. But even these fall short. Ms. Simmons does not allege that these comments were directed at her, *see id.*, and "[w]hen racial statements are not made directly to [the] plaintiff, generally a hostile [work] environment cannot be established," *Nurriddin v. Goldin*, 382 F. Supp. 2d 79, 108 (D.D.C. 2005), *aff'd sub nom. Nurriddin v. Griffin*, 222 F. App'x 5, 5-6 (D.C. Cir. 2007); *see Lester v. Natsios*, 290 F. Supp. 2d 11, 31 (D.D.C. 2003) ("Conduct directed at others rather than at [the] plaintiff . . . is less indicative of a hostile work environment."); *Dudley*, 924 F. Supp. 2d at 166 ("The Court should be careful when weighing" evidence of "workplace racism that did not directly involve the plaintiff[.]").

While Ms. Simmons was represented when she filed her complaint, her pro se opposition—liberally construed—may be taken to allege that Mr. Mahoney's comments were in fact directed

at her. ECF No. 12, at 4 ("Plaintiff was subjected to repeated harassment by her supervisor, including race-based and derogatory comments about her belonging."). But even liberally construing Ms. Simmons's opposition, *see supra* n.2, her allegations are still insufficient because Mr. Mahoney's comments—while concerning—were not "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (quoting *Vinson*, 477 U.S. at 67); *see Nagi v. Chao*, No. 16-CV-2152, 2018 WL 4680272, at *3 (D.D.C. Sep. 28, 2018) ("It has long been clear in this district that isolated incidents of offensive language and even ethnic or racial slurs do not 'affect the conditions of employment to [a] sufficiently significant degree to violate Title VII.'" (quoting *Deloatch v. Harris Teeter, Inc.*, 797 F. Supp. 2d 48, 62 (D.D.C. 2011))).

Indeed, courts have held that statements similar to those Ms. Simmons alleges are insufficient to sustain a hostile work environment claim. *See, e.g.*, *Harris v. Wackenhut Servs.*, 419 Fed. App'x 1, 1-2 (D.C. Cir. 2011) (per curiam) (holding that three racially motivated comments during a one-year period were "not sufficiently extreme" to support a hostile work environment claim); *George*, 407 F.3d at 416-17 (holding that an employee being thrice told to "go back where she came from" did not amount to a hostile work environment); *Badibanga v. Howard Univ. Hosp.*, 679 F. Supp. 2d 99, 104 (D.D.C. 2010) (dismissing a hostile work environment claim where the plaintiff alleged that he had received comments that "he was easy to replace with an American," that his manager "would not hire other Africans," and criticizing his accent). Accordingly, the court grants the Secretary's motion to dismiss Count II.

### C. Retaliation

As an initial matter, Ms. Simmons appears to assert both a retaliation claim in Count III, *see* ECF No. 1, at 10-12 ¶¶ 52-65, and a retaliatory hostile work environment claim in Count IV,

*see id.* at 12-13 ¶¶ 66-77. But the retaliatory hostile work environment claim in Count IV is premised on the same allegedly harmful conduct as the hostile work environment claim in Count II. *Compare id.* at 12 ¶ 68 (alleging that Mr. Mahoney "created a hostile and offensive workplace environment"), *with id.* at 8 ¶ 41 (same). Put another way, Ms. Simmons appears to allege in Count IV that the hostile work environment *itself* was a form of retaliation. *See* ECF No. 1, at 12 ¶ 68 ("As a result of Plaintiff's protected status [based on engaging in protected EEO activity], Plaintiff's supervisor . . . created a hostile and offensive workplace environment"). Because Ms. Simmons fails to allege a hostile work environment claim, *see supra* Section IV.B, her retaliatory hostile work environment claim also fails, *see Baird*, 662 F.3d at 1250-51 (holding that a retaliatory hostile work environment claim must satisfy the standard for a hostile work environment claim). The court therefore grants the Secretary's motion to dismiss Count IV, and next considers Ms. Simmons's retaliation claim in Count III.

Title VII "prohibits an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (first alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). To establish retaliation, a plaintiff must allege that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal link connects the protected activity and the adverse action. *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009). An activity is considered "protected" under Title VII if it "involves opposing alleged discriminatory treatment by the employer or participating in legal efforts against the alleged treatment." *Beyene v. Hilton Hotels Corp.*, 815 F. Supp. 2d 235, 247 (D.D.C. 2011), *aff'd* 573 F. App'x 1 (D.C. Cir. 2014) (quoting *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d

76, 91-92 (D.D.C. 2006)). Thus, a "plaintiff alleging retaliation faces a low hurdle at the motion to dismiss stage." *Winson v. Clough*, 712 F. Supp. 2d 1, 11 (D.D.C. 2010). The Secretary does not dispute that Ms. Simmons's receipt of an "unacceptable" performance rating and termination were materially adverse actions. *See* ECF No. 9, at 12-13; ECF No. 13, at 6. Accordingly, the court focuses its analysis on the first and third elements: protected activity and causation.

**1. Protected activity**

Ms. Simmons alleges that she made several reports that constitute protected activity. Those reports concern two subjects. First, Ms. Simmons alleges that, between February 2021 and July 2021 and in September 2021, she reported to Ms. Jackson (the EEO Functional Manager) that Mr. Mahoney was mismanaging cases and also made direct complaints about this to Mr. Mahoney himself. ECF No. 1, at 4-6 ¶¶ 12, 16-17, 23. The Secretary does not address these statements in his motion to dismiss, *see generally* ECF No. 9, and he has thus forfeited any argument for dismissal of Ms. Simmons's retaliation claim on this basis, *see Bess v. District of Columbia*, No. 19-CV-3152, 2021 WL 4819882, at *3 (D.D.C. Oct. 15, 2021) (assuming protected activity when the defendant failed to challenge whether certain activity qualified).

Second, Ms. Simmons alleges that, between February 2021 and September 2021, she reported to Ms. Jackson that Mr. Mahoney had made racialized statements to the effect that "[t]his is not a black person's program, and he needed more [w]hite people in the office." ECF No. 1, at 4 ¶ 13. The Secretary argues that these reports did not amount to protected activity. ECF No. 9, at 12; ECF No. 13, at 6. The court disagrees.

The threshold requirement that a plaintiff engaged in protected activity is "ordinarily met when 'an employee . . . communicates to her employer a belief that the employer has engaged in a form of employment discrimination.'" *Savignac v. Jones Day*, 754 F. Supp. 3d 135, 194

(D.D.C. Oct. 3, 2024) (first alteration in original) (quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). "While no 'magic words' are required, the complaint must in some way allege unlawful discrimination, not just frustrated ambition." *King v. Blinken*, No. 23-CV-1386, 2024 WL 4345843, at *6 (D.D.C. Sep. 30, 2024) (quoting *Broderick v. Donaldson*, 437 F.3d 1226, 1232 (D.C. Cir. 2006)). "[A]mbiguous complaints that do not make the employer aware of alleged discriminatory misconduct do not constitute protected activity." *Dodson v. U.S. Capitol Police*, 633 F. Supp. 3d 235, 261 (D.D.C. 2022) (quoting *Clemmons v. Acad. for Educ. Dev.*, 107 F. Supp. 3d 100, 128 (D.D.C. 2015)). At the same time, no formal complaint is required. *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007) ("It is well settled that Title VII protects informal, as well as formal, complaints of discrimination."). Nor must the complaint be made to a supervisor so long as the employer is put on notice. *See Brady v. U.S. Capitol Police*, 200 F. Supp. 3d 208, 215 n.4 (D.D.C. 2015) (noting that "other courts have found that reporting discriminatory conduct to a colleague, but not a supervisor, is sufficient to amount to oppositional conduct" (citing *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 647 (6th Cir. 2015))); *Williams v. Smithsonian Inst.*, 177 F. Supp. 3d 331, 335 (D.D.C. 2016) (holding that complaints to "a co-worker and not Plaintiff's supervisor or manager . . . were still sufficient to put the [employer] on notice" when the complaints would be transmitted to management).

At this early stage, Ms. Simmons sufficiently alleges that she engaged in protected activity when she reported to Ms. Jackson "that Mr. Mahoney was making statements" to the effect that "[t]his is not a black person's program, and he needed more [w]hite people in the office." ECF No. 1, at 4 ¶ 13. Under Title VII, a plaintiff can establish that she engaged in protected activity by "opposing any practice that Title VII makes an unlawful employment practice." *Wang v. Wash.*

*Metro. Area Transit Auth.*, 206 F. Supp. 3d 46, 76 (D.D.C. 2016) (citing 42 U.S.C. § 2000e-3(a)(1)). And Title VII "protects a broad range of informal actions or statements that employees make in resistance to actions they reasonably perceive to be discriminatory." *Id.* "[O]pposition activity may be protected even though the employer's practices do not amount to a violation of Title VII," as long as the plaintiff has "a good faith and reasonable belief that the practices are unlawful." *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 24 (D.C. Cir. 2013). Reading the complaint in the light most favorable to Ms. Simmons, as the court must, it is plausible that her disclosure was based on a good faith and reasonable belief that Mr. Mahoney had engaged in discriminatory conduct. *See McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012) (noting that Title VII prohibits employer retaliation when an employee opposes "a practice that the employee reasonably and in good faith *believed* was unlawful under the statute"). And that disclosure alone, without any additional action, is sufficient to be protected activity. *See Crawford*, 555 U.S. at 276-78 (explaining that "opposition" includes "tak[ing] no action at all to advance a position beyond disclosing it").

The Secretary, relying solely on *Lemmons*, 431 F. Supp. 2d at 92, responds that Ms. Simmons's complaint reflects only "general frustration with Mr. Mahoney" because Ms. Simmons did not report to Ms. Jackson that *she* had been discriminated against, and Mr. Mahoney's statements did not "imply" that any discrimination had occurred. ECF No. 9, at 12; ECF No. 13, at 6. The Secretary's argument fails for two reasons.

First, *Lemmons* is distinguishable. The reported statements in *Lemmons*—unlike the reported statements here—did not mention race or any other protected category. *See* 431 F. Supp. 2d at 81 ("Nowhere in the plaintiff's memorandum did she intimate that the harassment she described was racially-based or racially-motivated."); *see also id.* at 80-81 (recounting the

plaintiff's memorandum reporting that a supervisor had "lashed out at [the plaintiff]" and "blatantly gossip[ed] about [her]"). Moreover, the plaintiff in *Lemmons* admitted that "she did not believe that [her supervisor] was harassing her based on [a protected characteristic]." *Id.* at 92. Thus, the court in *Lemmons* concluded that the plaintiff's report to her employer was not protected activity because the plaintiff had complained about harassment "generally and generically." *Id.* By contrast, Ms. Simmons reported statements that explicitly invoked race, ECF No. 1, at 4 ¶ 13, and she also alleges that she was subjected to discriminatory conduct, *id.* at 10 ¶ 53; ECF No. 12, at 4.[4]

Second, Ms. Simmons's specific disclosure to the "EEO Functional Manager," coupled with her allegations that Mr. Mahoney had asserted that "he need[ed] to hire a 'white woman'[] and 'there is only one white person in the office,'" *id.* at 4-5 ¶¶ 12-13, 21, plausibly evinced Ms. Simmons's reasonable, good faith belief that Mr. Mahoney had engaged in discriminatory conduct, *see McGrath*, 666 F.3d at 1381. The court therefore concludes that Ms. Simmons sufficiently alleges that she engaged in protected activity.

**2. Causation**

Ms. Simmons alleges that a causal connection exists based on the temporal proximity between her reports, her termination, and her "unacceptable" performance evaluation. ECF No. 1, at 10-11 ¶¶ 52-56; ECF No. 12, at 4; ECF No. 15, at 5. The Secretary argues that Ms. Simmons fails to sufficiently identify timing that could "link these adverse [employment] actions to any

[4] Indeed, a plaintiff need not be the target of discrimination to engage in protected activity; a qualifying complaint must only "in some way allege unlawful discrimination." *King*, 2024 WL 4345843, at *6 (quoting *Broderick*, 437 F.3d at 1232). But in *Lemmons*, the plaintiff had failed to complain about discrimination *at all*. *See* 431 F. Supp. 2d at 81.

protected activity" and points to other legitimate reasons for her termination and poor performance evaluation. ECF No. 9, 12-13; ECF No. 13, at 6-7. The court concludes that Ms. Simmons sufficiently alleges causation.

To defeat a motion to dismiss on causation grounds, Ms. Simmons must allege sufficient facts to suggest that "her protected activity was a but-for cause of the alleged adverse action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). One way a plaintiff can do so is "by showing that the employer had knowledge of the [plaintiff's] protected activity, and that the adverse personnel action took place shortly after that activity." *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985). "Temporal proximity can . . . support an inference of causation, but only where the two events are 'very close' in time." *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)). While there is no bright-line rule, "the Supreme Court has cited circuit decisions suggesting that[,] in some instances[,] a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation." *Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012).

Ms. Simmons plausibly alleges an inference of causation based on temporal proximity. Specifically, she alleges that she reported Mr. Mahoney's case mismanagement between February 2021 and July 2021 and in September 2021, ECF No. 1, at 4-6 ¶¶ 12, 16-17, 23; and reported Mr. Mahoney's racialized statements between February 2021 and September 2021, *id.* at 4 ¶ 13. The Secretary responds that Ms. Simmons fails to proffer specific timing, ECF No. 9, 12-13; ECF No. 13, at 6-7, but the court must assume in the light most favorable to Ms. Simmons that her complaints about Mr. Mahoney's racialized statements continued into September 2021. Mr. Mahoney then declined to convert Ms. Simmons's position and terminated Ms. Simmons only

a few days later, on October 4, 2021. ECF No. 1, at 6 ¶¶ 24-25. And either shortly before or contemporaneous with those actions, Mr. Mahoney issued an "unacceptable" performance rating to Ms. Simmons. *Id.* at 6 ¶ 26; *see id.* 6 ¶ 24; ECF No. 15, at 2. That timing is sufficient to plausibly allege causation. *See Williams v. District of Columbia*, 317 F. Supp. 3d 195, 201 (D.D.C. 2018) (holding that a termination "[l]ess than four weeks" after reporting discrimination states "a plausible claim for retaliation"); *Ferguson v. Small*, 225 F. Supp. 2d 31, 38-39 (D.D.C. 2002) (holding that a termination "a little more than a week after" the employee protested discrimination was "sufficient to establish the causal element"); *Sullivan-Obst v. Powell*, 300 F. Supp. 2d 85, 95 (D.D.C. 2004) (concluding "that the one-month time period between the plaintiff's" complaint and her termination "is short enough to establish a prima facie case of retaliation"); *cf. Hopkins v. Grant Thornton Int'l*, 851 F. Supp. 2d 146, 153 (D.D.C. 2012) ("The short period of time between [the plaintiff's] protected activity and his termination lend support to the argument that the former was the basis for the latter."), *aff'd sub nom. Hopkins v. Grant Thornton, LLP*, 529 Fed. App'x 1 (D.C. Cir. 2013).

The Secretary also contends that Ms. Simmons's own allegations in the complaint "suggest[] numerous legitimate reasons for" her termination and poor performance evaluation. ECF No. 9, at 13; ECF No. 13, at 7. However, Ms. Simmons is not required to negate alternative bases for the adverse action in order to survive a motion to dismiss. *See Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (holding that a plaintiff "is not required . . . to allege facts sufficient to negate the [employer's] alternative explanations for its actions" to state a retaliation claim). Whether Mr. Mahoney had legitimate, non-retaliatory reasons for his actions is an inquiry for summary judgment. *See Ryan-White v. Blank*, 922 F. Supp. 2d 19, 23 (D.D.C. 2013) ("Notably, at the motion-to-dismiss stage, a Title VII plaintiff is not generally required to plead facts that

specifically rebut a defendant's legitimate, nondiscriminatory reasons[.]"). The court therefore concludes that Ms. Simmons sufficiently alleges a causal connection between her protected activity and her termination. Accordingly, the court denies the Secretary's motion to dismiss Count III.

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Secretary's Motion to Dismiss, ECF No. 9, is **GRANTED** as to Counts II and IV and **DENIED** as to Counts I and III. It is further **ORDERED** that the Secretary shall file an answer to Counts I and III on or before October 9, 2026. *See* Fed. R. Civ. P. 12(a)(4)(A).

LOREN L. ALIKHAN
United States District Judge

Date: September 25, 2026